Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 5926 | DATE | 5/31/2001 |
| CASE TITLE | SAMUEL TEERLING vs. FLEETWOOD MOTOR HOMES OF INDIANA | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendants' motions for summary judgment are granted. The Court also grants Spartan's motion to strike portions of Plaintiff's LR56.1(b)(3)(A) and LR56.1(b)(3)(B) Statements and defendants' motions to bar the testimony of plaintiff's expert witness. This is a final and appealable order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUN 04 2001 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | docketing deputy initials | |
| ✓ | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | ED-7 FILED FOR DOCKETING 01 JUN -1 AM 11: 53 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SAMUEL TEERLING,<br><br>    Plaintiff,<br><br>v.<br><br>FLEETWOOD MOTOR HOMES OF INDIANA, INC., and SPARTAN MOTORS, INC.<br><br>    Defendants. | No. 99 C 5926<br>Paul E. Plunkett, Senior Judge |

## MEMORANDUM OPINION AND ORDER

Samuel Teerling claims that defendants sold him a defective motor home and breached their express warranties in violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. In Counts I and III of his first amended complaint, plaintiff seeks damages for defendants' alleged breaches and in Counts II and IV he seeks to revoke his acceptance of the vehicle. Defendants have each filed a Federal Rule of Civil Procedure ("Rule") 56(c) motion for summary judgment on the claims asserted against them and a motion to bar the testimony of plaintiff's expert witness. Spartan has also filed a motion to strike portions of plaintiff's Local Rule ("LR") 56.1(b)(3)(A) and 56.1(b)(3)(B) Statements. For the reasons set forth below, all of the motions are granted.

### Motion to Strike

Spartan asks us to strike paragraphs 6, 40 and 54 from Plaintiff's Rule 56.1(b)(3)(A) Statement because he has not cited any evidence to support his denial of those fact statements.

Defendants' paragraph 6 states: "In order to support his allegations under the Magnuson-Moss Act, Plaintiff disclosed Thomas Walters as his Rule 26(a) opinion witness to render opinions [sic] the Plaintiff's vehicle was in a defective condition." Plaintiff denied only the first clause of this statement, and he did so on the grounds that he does not need an expert to prove a violation of Magnuson-Moss. That is a legal argument, which has no place in an LR 56.1 statement. It is, therefore, stricken.

The controversy over paragraph 54 is also a legal dispute. In that paragraph of their LR 56.1(a)(3) Statement, defendants do not state facts (i.e., on June 4, 1999, plaintiff signed a letter), they state a legal conclusion ("Mr. Teerling executed a release"), which plaintiff denies. (See Defs.' LR 56.1(a)(3) Stmt. ¶ 54.) This dispute should be aired in the briefs, not packaged as a factual dispute in the LR 56.1 statements. Consequently, paragraph 54 is stricken from both Defendants' LR 56.1(a)(3) Statement and Plaintiff's LR 56.1(b)(3)(A) Statement.

In his response to defendants' paragraph 40, plaintiff asserts that his expert, Mr. Walters, rendered an opinion on the vehicle's air suspension system based, in part, on its repair history. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 40.) Plaintiff cites no evidence for that proposition, as the Rule requires. As such, that paragraph is stricken.

Spartan also asks us to strike a portion of paragraph 15 and all of paragraph 16 from Plaintiff's LR 56.1(b)(3)(B) Statement.[1] Paragraph 15 says that plaintiff contends various items on his motor home are still defective, including the "air bags in the air suspension," and he cites his own affidavit as support. Spartan contends that the affidavit of a layman is insufficient to raise a factual

---

[1] Initially, Spartan also asked us to strike paragraphs 1-14 of Plaintiff's LR 56.1(b)(3)(B) Statement on the grounds that the documents supporting those statements were hearsay. The parties subsequently filed a stipulation with respect to those documents and Spartan withdrew its objection.

-2-

issue with respect to the condition of the air suspension system.[2] The Court agrees. The proper operation of a motor home air suspension system is not a subject of common knowledge or understanding. Thus, expert testimony is required to raise a triable issue of fact on the existence of a defect in that system. Accordingly, the reference to the air bags in the air suspension system in paragraph 15 of Plaintiff's LR 56.1(b)(3)(B) Statement is stricken.

Paragraph 16 of Plaintiff's LR 56.1(b)(3)(B) Statement is the flip-side of paragraph 54 of Defendants' LR 56.1(a)(3) Statement. In it plaintiff says: "In relation to the vehicle's alignment, Mr. Teerling never executed a release . . . ." Again, this is a legal conclusion, not an assertion of fact, which has no place in an LR 56.1 statement. It is, therefore, stricken.

### Motion to Bar Plaintiff's Expert

In opposition to defendants' motion, plaintiff has proffered the testimony of Thomas Walters, an expert in auto mechanics. According to Mr. Walters' report, manufacturing defects exist in the entry door and exterior paint of the coach and in the air suspension system and may exist in the electrical system of the chassis. (See Defs.' LR 56.1(a)(3) Stmt., Ex. B, Walters Report at 2-3.) Defendants contend that Mr. Walters' testimony should be barred because he has no expertise with respect to either motor home coaches or chassis.

Mr. Walters' background is as follows. He graduated in 1983 from the Automotive Technician Program at Wyoming Technical Institute. (Id., Ex. C, Walters Dep. at 5.) For the next ten years he worked as an auto technician at various Mercedes Benz dealerships. (Id. at 5-6.)

---

[2] Spartan also objected to the fact that plaintiff's affidavit was not notarized. Plaintiff subsequently cured this defect and Spartan withdrew its objection.

Afterwards, he spent seven years working as a technician, master diagnostics specialist and shop foreman of a Lexus dealership. (Id. at 6.) Mr. Walters is certified as a Master Automobile Technician by the National Institute for Automotive Service Excellence in "engine repair, automatic trans/transaxle, manual drive train and axles, suspension and steering, brakes, electrical/electronic systems, heating and air conditioning, engine performance and automobile advanced engine performance." (Id. at 6-7; Defs.' LR 56.1(a)(3) Stmt., Ex. B, Walters Report, ASE Certificate.) Currently, Mr. Walters operates Techcentric Automotive, Inc., a company that provides vehicle inspection services. (Defs.' LR 56.1(a)(3) Stmt., Ex. C, Walters Dep. at 7-8.)

It is undisputed, however, that Mr. Walters has never: (1) worked for a motor home manufacturer, dealer or service center; (2) owned a motor home; (3) attended any seminars, workshops or other classes devoted to the repair or maintenance of motor homes; (4) subscribed to any trade publications concerning the motor home industry; or (5) been involved in the design or manufacture of motor homes. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶¶ 10–12, 14-15, 18, 20-21.) Moreover, there is no dispute that plaintiff's motor home was the first one that Mr. Walters had ever inspected, that he is unfamiliar with the maintenance and adjustment schedules for motor homes and that he did not review the owner's manual for plaintiff's motor home before or after he conducted his inspection. (Id. ¶¶ 19, 22, 24-25.)

Mr. Walters' undisputed background discloses no basis for his opinion that the hinges used on the coach entry door "are defectively weak" or that there is a manufacturing defect in the paint match on the coach. (See Defs.' LR 56.1(a)(3) Stmt., Ex. B, Walters Report at 2-3.) Indeed, of the six coach components that plaintiff claims are still defective, the windshield on the drivers' side, the slide out, the seals on the entry door, the lower storage compartments, the cold water drain valves

and the air conditioner compressor seal, (see Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 15), Mr. Walters is qualified, at least arguably, to opine on only two: the windshield and the air conditioner compressor seal. His report does not mention the windshield and states that he has no opinion on the air conditioning system because he was unable to test it. In short, the record establishes that Mr. Walters has no "scientific, technical, or other specialized knowledge" that will help the trier of fact determine whether there are manufacturing defects in the coach portion of plaintiff's motor home. See FED. R. EVID. 702. Fleetwood's motion to bar Mr. Walters' testimony is, therefore, granted.

The situation is a bit different for Spartan, the manufacturer of the chassis. Though Mr. Walters has no training with respect to the mechanics of a motor home, he has a wealth of training and experience with respect to the mechanics of automobiles. Thus, unless the air suspension system of a motor home – the only chassis component plaintiff claims is still defective – differs substantially from that of an automobile, Mr. Walters is qualified to provide his opinions on that system in this suit.

According to Mr. Walters' deposition testimony, there is a difference between the air suspension systems of motor homes and those of automobiles. When he was questioned about the topic, Mr. Walters initially testified that he thought those in motor homes "would be similar [to] automotive, but . . . in a bigger application." (Defs.' LR 56.1(a)(3), Ex. C, Walters Dep. at 43.) Subsequently, however, he admitted that: (1) he does not have expertise in motor home air suspension systems; (2) he does not know whether air suspension systems for motor homes are designed to lose air pressure when they sit idle for long periods of time; and (3) he simply does not have enough experience with motor homes to form an opinion as to whether the air suspension system in plaintiff's motor home was defective. (Id. at 45, 69-72.) Given these admissions, it is

clear that Mr. Walters does not possess the knowledge with respect to motor home air suspension systems that is a prerequisite to testifying as an expert under Federal Rule of Evidence 702.[3]

In sum, the record establishes that Mr. Walters does not have the necessary "scientific, technical or other specialized knowledge" with respect to motor home coaches or the air suspension systems of motor home chassis to provide expert testimony on those subjects. Because Mr. Walters either cannot or did not form any opinions to which he is competent to testify in this suit, defendants' motion to bar his testimony is granted.

## Summary Judgment Motion

### Facts

On June 6, 1998, plaintiff bought a 1998 Fleetwood American Tradition motor home from Earnhardt Ford Sales Company. (Pl.'s LR 56.1(b)(3)(A) Stmt. ¶ 3.) Defendant Fleetwood manufactured the coach portion of the motor home and provided a limited warranty for "all defects (other than structural) . . . for a period of one year . . . or . . . 15,000 total miles" and for structural defects for a period of three years. (Id. ¶ 4; id., Ex. A, Am. Compl., Ex. B, Fleetwood Warranty.)

Defendant Spartan manufactured the chassis portion of the motor home and provided a limited

---

[3]Though plaintiff has abandoned his claim that the motor home's electrical system is defective, (see Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 15), Mr. Walters could not testify on that subject even if plaintiff wished to pursue it. Though he is apparently qualified to render an opinion on the adequacy of the electrical system, Mr. Walters admits in his report that he was unable to determine whether it was defective. (Defs.' LR 56.1(a)(3), Ex. B, Walters Report at 3 (noting that he was unable to test the electrical system and concluding that "a manufacturing *may* exist that is causing the batteries to be drained") (emphasis added); id., Ex. C, Walters Dep. at 33.) Thus, Mr. Walters could not testify about the electrical system even if that issue were still in the suit.

warranty that covered "repair or replacement . . . of any warranted part . . . in which a defect in materials or workmanship appears under normal use, maintenance or service." (Id. ¶ 5; id., Ex. A, Am. Compl., Ex. C, Spartan Warranty.) Plaintiff took his motor home in for repairs to the chassis or the coach on twelve separate occasions between July 15, 1998 and December 7, 1999. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶¶ 1-14.) Despite the repairs, plaintiff contends that the windshield on the driver's side, the slide out, the seals on the entry door, the lower storage compartments, the cold water drain valves, the air bags in the air suspension and the air conditioner compressor seal are still defective. (Id. ¶ 15.) Plaintiff claims that defendants have breached their respective warranties and seeks damages under the Magnuson-Moss Warranty Act for those breaches.

## The Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At this stage, we do not weigh evidence or determine the truth of the matters asserted. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. Michas v. Health Cost Controls of Illinois, Inc., 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. Id.

## Discussion

The Magnuson-Moss Warranty Act requires anyone who issues a written warranty on a consumer product to "remedy such consumer product within a reasonable time and without charge, in the case of a defect, malfunction or failure to conform with such written warranty." 15 U.S.C. § 2304(a)(1). If he fails to do so, "such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product." Id. Thus, to prevail on his Magnuson-Moss claim against defendants, plaintiff must show that: (1) his motor home has a defect in parts or workmanship (2) defendants were not able to remedy it in a reasonable amount of time; and (3) he suffered economic harm as a result. 15 U.S.C. §§ 2304(a)(4), 2310(d); Jones v. Fleetwood Motor Homes, 127 F. Supp. 2d 958, 963 (N.D. Ill. 2000). The first element, defendants contend, can only be established with expert testimony. Because Mr. Walters' testimony has been barred, defendants conclude that plaintiff's proof on the first element necessarily fails.

We disagree. Neither the Act nor any case interpreting it, as far as the Court is aware, requires that all defects be proven with expert testimony. Therefore, we see no reason to depart from the general rule that expert testimony is "not essential if the subject can be understood by the ordinary juror." Scaccianoce v. Hixon Mfg. & Supply Co., 57 F.3d 582, 587 (7th Cir. 1995). Thus, the extent to which plaintiff needs expert testimony to prove a defect in the coach or chassis depends on the nature of the defect he alleges.

According to plaintiff, the windshield on the driver's side, the slide out, the seals on the entry door, the lower storage compartments, the cold water drain valves, the air bags in the air suspension and the air conditioner compressor seal are defective. (Pl.'s LR 56.1(b)(3)(B) Stmt. ¶ 15.) Though plaintiff does not explain what the problems are with these components, we can infer from the motor

home's repair history that he believes the air suspension system is defective because it loses pressure when the motor home sits idle. As we noted above, however, the proper operation of a motor home air suspension system is not within the knowledge or experience of lay people. Because plaintiff has no expert testimony on this subject and defendants' expert says that the air suspension system is operating normally, (see Defs.' LR 56.1(a)(3) Stmt., Ex. E, Radcliffe Aff., Ex. 1 ¶ 2(l)), plaintiff has not created a genuine issue of fact with respect to this alleged defect.

The motor home repair history also indicates that plaintiff made three complaints about the windshield: (1) the trim had fallen off; (2) the driver's side sprayer was inoperable and (3) the windshield would not clear up on cold mornings or in cold rain. (See Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. H, Fleetwood Repair Order Claim Nos. 010768, 010772; id., Ex. L, Fleetwood Repair Order Claim No. 15409.) Plaintiff reported the first two problems in April 1999 and, apparently, both were fixed, as they are not mentioned in subsequent service orders. With respect to the last problem, which was reported in November 1999, the repair order states: "Checked defrost & heat. Found no problems. May need to run fans." (Id., Ex. L, Fleetwood Repair Order Claim No. 15409.) Apparently, running the fans solved the problem as plaintiff did not complain about the windshield when he took his motor home in for service the following month. In short, there is nothing in the record from which we can infer the nature of the problem that plaintiff claims he is currently having with the windshield.

Even if we assume that the current defect is the one plaintiff reported last, that the windshield fogs up unduly, the mere existence of that problem would not support the inference that the windshield is defective. Certainly that could be one explanation for the problem but, as the repair history demonstrates, a malfunction in the defroster, heater or fans, and perhaps other components,

could explain it is as well. Absent evidence, expert or otherwise, that tends to rule out the other possible causes of excessive fog on the windshield, the existence of this problem, standing alone, does not suggest that the windshield is defective.

Moreover, even if excessive fogging necessarily denoted a defective windshield, plaintiff would still not satisfy the second element of his prima facie case. According to the repair history, plaintiff complained about the fog issue only once. By its very terms, the Magnuson-Moss Warranty Act contemplates that warrantors will be given at least two chances to remedy an alleged defect before they will be required to provide a refund or replacement. 15 U.S.C. § 2304(a)(4) ("[I]f the product (or a component thereof) contains a defect or malfunction after *a reasonable number of attempts* by the warrantor to remedy the defects or malfunctions . . . , such warrantor must permit the consumer to elect either a refund . . . replacement . . . ."); see Marchionna v. Ford Motor Co., No. 94 C 275, 1995 WL 476591, at *11 (N.D. Ill. Aug. 10, 1995) (noting that "[t]he plurality of the word 'attempts' indicates that [warrantor is] entitled to at least two . . . attempts to correct the defect"). Because the record shows that plaintiff gave Fleetwood only one opportunity to correct this alleged problem, plaintiff's Magnuson-Moss claim would fail even if the record established that the windshield is defective.

Plaintiff also maintains that the motor home slide out is defective. Though he does not explain what the slide out is, the motor home repair history indicates that plaintiff complained about it on four occasions. The first two times, he said that the slide out was leaving black marks on the floor. (Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. B, Fleetwood Repair Order Claim No. 005770; id., Ex. E, Fleetwood Repair Order Claim No. 010378.) Apparently this problem was fixed by November 1998, because it is not mentioned in the repair history after that date. The third and fourth times plaintiff

mentioned the slide out, he said that its trim was wearing holes in the trim or wall of the motor home. (Id., Ex. H, Fleetwood Repair Order Claim No. 010768; id., Ex. K, Fleetwood Repair Order Claim No. 14613.) Apparently, this problem was fixed as well because plaintiff did not mention it the last three times he took his motor home in for service.

We cannot tell from the record whether the current problem with the slide out is one of those mentioned in the repair history or something else. Even if we assume that the slide out is currently plagued by one or both of those problems, however, their existence, standing alone, is not enough to suggest that the slide out is defective. Rather, plaintiff would have to offer evidence of the proper operation and maintenance of the slide out, a topic that would likely require expert testimony, and confirm that he operated and maintained it accordingly before the inference of a defect would arise. Because the record contains no such evidence, we cannot infer that the slide out is defective even if we assume that it continues to have the problems for which it was serviced.

The next alleged defect is the seal on the motor home's entry door. According to the repair history, plaintiff complained four times, in July 1998, December 1998, April 1999 and July 1999, about this issue. (Id., Ex. B, Fleetwood Repair Order Claim No. 005771; id., Ex. G, Fleetwood Repair Order Claim No. 008793; id., Ex. H, Fleetwood Repair Order Claim No. 010771; id., Ex. K, Fleetwood Repair Order Claim No. 13623.) Though these complaints stopped before the service calls did, plaintiff asserts that the entry door seals are still defective.[4] (Id., Ex. O, Teerling Aff. ¶ 3.)

---

[4] Unlike some of the other defects plaintiff cites this one needs no further explanation. The only purpose of entry door seals is to prevent outside air and elements from coming inside. Thus, they can be defective in only one way: by permitting air and weather to enter the motor home.

Again, one explanation for the malfunctioning seals is that they were manufactured or installed incorrectly. But there are other equally plausible explanations that plaintiff has not attempted to negate. Perhaps motor home entry door seals that are properly manufactured and installed have a limited life span and must be replaced periodically. Perhaps extreme temperatures or extreme temperature changes cause even the best seals to deteriorate. Perhaps plaintiff made adjustments to the door or some other component of the motor home that caused the seals, though they had been properly manufactured and installed, to degrade. In other words, absent some evidence that tends to refute the other possible causes of seal failure, we cannot infer, solely because they malfunction, that the seals were defectively manufactured or installed.

Plaintiff also contends that the lower storage compartments are currently defective. Again, he does not explain how the compartments are defective. The repair history indicates that plaintiff complained about storage compartments, though not necessarily the lower storage compartments, on three occasions. In November 1998, he complained that the four exterior compartments were leaking. (Id., Ex. E, Fleetwood Repair Order Claim No. 010301.) In July 1999, he reported that there was dust and dirt in all compartments (id., Ex. K, Fleetwood Repair Order Claim No. 18619), there was a water leak in the basement compartment (id., Fleetwood Repair Order Claim No. 13568), and that the luggage compartment carpet was wet and should be changed to rubber mats (id., Fleetwood Repair Order Claim No. 13569). In November 1999, he said that the small compartment door would not latch on top and was leaking water. (Id., Ex. L, Fleetwood Repair Order Claim No. 15408).

We can infer from the repair history that plaintiff's current complaint about the lower storage compartments is that they are not watertight, but we cannot assume from that fact alone that the

compartments are defective. If there were evidence that watertight storage compartments is a motor home industry standard, that these particular storage compartments were designed to be watertight or that Fleetwood represented that they would be, then the fact that they are not would support the inference that they are defective. The record contains no such evidence. Indeed, the evidence suggests that these compartments were not designed to be watertight and that Fleetwood disclosed that fact in the motor home owner's manual. (See Defs.' LR 56.1(a)(3) Stmt., Ex. F, Heim Report at 2 (noting that "Page 04-8 of American Tradition owner's manual states: 'Exterior storage compartments may not be watertight in all climate conditions. Carry any articles which could be damaged by water inside the motor home.'").) Thus, even if the storage compartments on plaintiff's motor home are not impervious to water, that fact alone does not suggest that they are defective.

Next plaintiff complains that the cold water drain valves are defective. The repair history indicates that plaintiff twice reported problems with water valves or drain valves, although not specifically the cold water drain valves. (See Pl.'s LR 56.1(b)(3)(B) Stmt., Ex. H, Fleetwood Repair Order Claim No. 010769; id., Ex. K, Fleetwood Repair Order Claim No. 14613.) The last complaint was made in July 1999 and was not repeated in the three subsequent service calls. (See id., Ex. K, Fleetwood Repair Order Claim No. 14613.) Moreover, the service notes on the July 1999 complaint state: "By pass valve was replaced, could not find a leak at drain valves." (Id.)

As with the other problems noted by plaintiff, even if we assume that the cold water drain valves currently leak, that fact alone is not enough to raise a triable issue of fact on whether they are defective. A drain valve may leak because it was poorly manufactured or installed. But it may be that all drain valves have a limited life span and must be replaced periodically or that these particular valves were damaged by inept home repair or some other owner action. Without more evidence, we

cannot conclude, simply because they leak, that the drain valves were defectively manufactured or installed.

Finally, plaintiff claims that the air conditioner compressor seal is defective. There is no indication in the record that plaintiff ever complained to defendants about this specific issue. Moreover, the record shows that plaintiff made only one complaint, in July 1998, about the air conditioning in general. At that point, he said that the front air conditioning was not as cold as the rear. (See id., Ex. B, Fleetwood Repair Order Claim No. 005346.) Apparently, this problem was fixed, as he never mentioned it again in any of the service visits he made in the next eighteen months.

Even if it was not, and the temperature variances were due to the air conditioner compressor seal, plaintiff still could not make out a prima facie breach of warranty case. According to the record, plaintiff gave Fleetwood, at most, only one opportunity to fix the compressor seal problem. Because there is no evidence that plaintiff gave Fleetwood a reasonable number of chances to fix this alleged defect, his Magnuson-Moss claim on this issue would fail even if the air conditioner compressor seal were defective.

Though there may not be evidence of a current defect, plaintiff argues that the repair orders conclusively establish that there *were* defects covered by the warranties that were not fixed in a reasonable amount of time. We disagree. First, though plaintiff says that "it is uncontroverted that the repairs that were performed by [defendants] were covered under the terms of [their] warranties," the record does not actually establish that fact. (See Pl.'s Resp. Defs.' Mot. Summ. J. at 12.) The repair orders submitted by plaintiff do not indicate whether the work was performed pursuant to the warranties. The repair orders from Selking, which serviced the chassis, indicate that plaintiff was

-14-

charged for its work. (Pl.'s LR 56.1(b)(3)(B) Stmt., Exs. A, D, F, M.) The Fleetwood and Spartan repair orders do not show a customer charge, suggesting that the work was covered by the warranties, but the copy quality of most of the orders is so poor that we cannot tell whether dollar amounts were written on the originals. (Id., Exs. B, C, E, G, H, I, J, K, L, N.) Moreover, each Fleetwood Repair Order has two boxes for the mechanic to check if the work is covered by warranty and neither of those boxes is checked on any of the repair orders. (Id., Exs., B, E, G, H, J, K, L.) Thus, the record does not establish that all of the repairs made to plaintiff's motor home were done free of charge pursuant to defendants' warranties.

Even if we assume that they were, we do not believe that defendants' business decision to treat those repairs as warranty work is an admission that their products were defective. Indeed, the repair orders themselves refute that notion. Many of those orders indicate that defendants made adjustments or replaced parts even though they could not substantiate plaintiff's complaints. (See e.g., id., Ex. C, Spartan Repair Order No. 3177 (complaint: air leaks down; conclusion: found no leaks, installed valve solenoid on both front air bags); id., Ex. E Fleetwood Repair Order Claim No. 010379 & Ex. G, Fleetwood Repair Order Claim No. 008859 (complaint: low water pressure; conclusion: inherent in design, but replaced with larger pump); id., Ex. H, Fleetwood Repair Order Claim No. 012743 (complaint: chassis batteries keep going dead; conclusion: no irregular draw, batteries are charging properly, but replaced one battery); id., Ex. K, Fleetwood Repair Order Claim No. 13569 (complaint: luggage compartment wet; conclusion: no leak, but changed carpet to rubber mats); id., Fleetwood Repair Order Claim No. 14613 (complaint: drain valves leak; conclusion: no leak found, but replaced by-pass valve); id., Ex. L, Fleetwood Repair Order Claim No. 15408 (complaint: small compartment door not latching, leaking water and screws leaking rust; conclusion:

latch operating properly, found no rust or leaks, but added sealant to screws and door).) As these orders illustrate, we cannot conclude, simply because defendants treated the adjustments and repairs to plaintiff's vehicle as warranty work, that the motor home was defective.

In sum, plaintiff has not adduced any evidence to suggest that there is or was a defect in the parts or workmanship of either the coach or chassis portion of his motor home that defendants failed to remedy in a reasonable amount of time. Defendants are, therefore, entitled to judgment as a matter of law on the Magnuson-Moss Warranty Act claims he asserts against them for both damages and revocation of acceptance.

## Conclusion

For the reasons set forth above, plaintiff has failed to raise a genuine issue of material fact on the existence of a defect in either the coach portion or the chassis portion of his motor home. Defendants are, therefore, entitled to judgment as a matter of law on the claims asserted against them. Accordingly, defendants' motions for summary judgment are granted. The Court also grants Spartan's motion to strike portions of Plaintiff's LR 56.1(b)(3)(A) and LR 56.1(b)(3)(B) Statements and defendants' motions to bar the testimony of plaintiff's expert witness. This is a final and appealable order.

**ENTER:**

_____
UNITED STATES DISTRICT JUDGE

DATED: 5-31-01